Good morning, your honors. I'm going to try to reserve three minutes for rebuttal and I will try to keep track of my time. Very well. Your honors, there are... I know you're Carl Gunn because I've seen you a million times. Please introduce yourself for the record. I forgot to introduce myself, your honor. Carl Gunn, appearing for Mr. Perez-Valencia. You know, there's multiple Supreme Court cases and cases of this circuit that, of course, describe wiretaps as a, quote, extraordinary investigative device, unquote. And defense attorneys, at least, and libertarians all talk about how it conjures up images of an Orwellian state and tyranny and there are fewer greater threats to liberty. But what's most important here is that Congress had those concerns as well. And because of that, Congress placed much greater restrictions on the use of wiretaps as a method of investigation than on other methods of investigation, such as, for example, search warrants. One of those restrictions, the one at issue here, was on the officials who could request them. Not just the officials who could grant them, but the officials who could request them. And that's close to unique in our system. It's important, because of that, for courts to enforce those restrictions. And you do that by interpreting and applying the statute that Congress wrote. Counsel, I'm looking at that statute, 2516. 2516-2 says, the principal prosecuting attorney of any state, if such attorney is authorized by a statute of that state. Isn't this a question of state law? No, it's not. In part it is, Your Honor, but that's only one of two necessary conditions. There's two necessary, two required conditions that that statute places on a state application for a wiretap. One is the sentence, Your Honor emphasized, that it be authorized by state law. But the second is that it also has, state law can't just authorize whoever it wants. It also has to be the principal prosecuting attorney. And that is the crux of the issue in this case, is what those words, the principal prosecuting attorney, means. It's not what some committee report that was written by a few staffers and approved by a few senators on a committee wrote. It's what the statute says. It's what the words, the principal prosecuting attorney, means. And there's at least three reasons those words don't include an assistant district attorney, like applied for the application here. First and second, there's two words in the plain language of that phrase. First, it says principal, which is the exact opposite of the word assistant that was in the applicant's title here. Second, it says the. It doesn't say one of the or one of several. The means a single person. Not a backup designated cover when the principal person is relatively unavailable. Third, Your Honors, there's another basic principle of statutory construction that applies here. And that's when Congress says it in one part of a statute and doesn't say it in another part, that's presumed to be intentional. Congress knew how to say when it wanted to allow other people to be designated by the principal person. Because it did that in the section on federal applicants. And looking, what's the purpose behind everything that we're talking about? What was the congressional purpose in residing this function in one person? Well, first, well, if I can make one point before I answer Your Honor's question. First of all, why don't you just answer my question. Answer the question first, then I'll make my point second. The purpose, Your Honor, was to have this decision be made by someone who's politically responsible. You're talking about 1968. Yes. You see, that was all changed when they changed the statute. I used to do this. I know. I did nothing but review these things for years when I was the assistant attorney general in charge of the criminal division. That's what I guessed as I prepared for this argument. But then what happened is Congress came in because we, meaning the Department of Justice, was able to show it. And they expanded that to include people who aren't politically accountable. My deputies, including civil service deputies, would now be, if I were there, empowered to do this. Correct. Routinely. So doesn't that slightly pull a little bit out of your idea that that person has to be politically accountable? No, it doesn't, Your Honor. Federally people who aren't politically accountable at all can do it all the time. Right. I think it goes to my second point that I was about to make. And that is, well, you have to, you know, the purpose may be sort of a background idea there. But the main thing you have to look at is the language of the statute. The language of the statute is the principal prosecuting attorney. That language was not written when the statute was amended in the 1980s or 90s or whenever it was. That language was written and is exactly the same as it was now. It was written in 1968. And so in 1968, the people who got off, every federal official who was authorized in the federal section, if you're going to look at the sort of implied purpose, was a person who was approved, I believe, by the Senate. Right. Or politically responsible in some other way. You're right. We all had to be confirmed. Correct. The only people who could approve at that point had to be confirmed by the Senate. And that's the comparison that matters for purposes of interpreting this language, because this language was written in 1968. If it had been amended in 1980s or 1990s when the other language was, perhaps there would be a different issue. But it wasn't. It seems, though, that they handed part of this off, as Judge O'Scanlan pointed out, to state law. And if you look at it in terms of function, the persons under the California Statute 629, they are functioning as the principal prosecuting attorney in the absence of the district attorney. And they have every power that the district attorney had. So if you look at it functionally, why doesn't that wash? Two points. First of all, your premise, Your Honor, they didn't hand it off to state law. They just added a state law condition to the other condition of the principal prosecuting attorney. But what Your Honor is suggesting is that maybe this person is the principal prosecuting attorney. I think he doesn't fit within that language for at least three reasons. First of all, it basically doesn't fit the word the, meaning a single person. Because first of all, this memo that was the designation in this case didn't list just one person. It listed three separate people. So that doesn't satisfy the meaning of the word the. Second, it doesn't make them generally the principal prosecuting attorney. It makes them the prosecuting attorney for purposes of Penal Code 629.50A. It makes them the sort of principal prosecuting attorney for purposes of applying for wiretaps. Third, Your Honor, and I think this is a really key point also, is that might be a good point if this person was actually substituted for the DA and the DA was out of the picture as a legal matter. I remember back I think during Jerry Brown's first term, there was a lieutenant governor, I think it was Brown, named Mike Curb who would claim that there was some state law. Yeah, and the governor went out of the state and Mike Curb started appointing judges. Because there was a law that Mike Curb at least said made him in charge and not Brown. And when Brown came back, he undid them. Right. But that's not what we have here. Here we have a DA who was at the hospital for three days. There's no suggestion that he didn't retain and possess his overriding authority if he wanted to exercise it. So again, it doesn't satisfy the meaning of the word the. Is the Fury case something that you have to overcome to win? Well, I mean, the Fury case I think disagrees with me. I think the Fury case is wrong. The Fury case is arguably dictum. I address it in my papers. It's in a footnote and they say all of our discussion doesn't make any difference because it was forfeited. Yes. So you say it's not a holding. Right. And also it doesn't fit the way statutes get interpreted, Your Honor. What's the mistake Fury made? Pardon me? What's the mistake Fury made? The mistake Fury made was relying on, first of all, it relies just on legislative history and the idea that Congress couldn't have meant this to happen. When, in fact, there's legislative history suggesting maybe Congress didn't mean it to happen. I kind of like the idea that Congress couldn't have meant this to happen. I mean, you could undo anything. Exactly. And legislative history, of course, can be used the same way. They rely on this language, one line in a committee report. The question of delegation would be a question of state law. Right. There's a host of problems with relying on that. First, you have the problem that a committee report can't override the plain language of the statute. You've been reading Scalia. I have been reading Scalia. He's a wise man. Let's take that down. Second, Your Honor, and there's nothing in the plain language that says anything about delegation. Second, if you put that sentence in the context of the whole paragraph that I quoted, pages 22 and 23 of my opening brief, it's murky at best. You can't really tell what it means. And third, think about it. That sentence proves too much. If this statute says delegation is a matter of state law, then think what could be allowed. You know, for some reason, and maybe I'm wrong on this, I see a difference between delegation and designation. You know, you just can't willy-nilly delegate. You know, I knew Newman Flanagan, too. Newman would rather do other things than work, so he delegated everything to everybody, and that's part of the problem with the Smith case. But do you think there's a difference between designating somebody, as is done in California, and just delegating the authority to? Perhaps there is, but your question was about fury and why fury is wrong. Fury relies on that language about delegation. Right. That would mean that, whether you use delegation or designation, I guess, it would mean the attorney general could select any lowly assistant district attorney and as many as he wanted to give this authority to, which I think clearly everyone agrees isn't intended. Even the government realizes that's going too far. They start writing in all these other limitations based on the legislative history. Was an argument made in the district court that there's something additionally wrong with this designation memo because it's not only Christie but it's also Hackleman and Hanson? Is that a separate issue that the delegation of the designation memo itself is? Did you make that argument in the district court? Is it infirmed because it has too many people? I believe I made the argument that that would not bring it within the words de-principal prosecuting attorney. I did not make an argument that it violated state law. Do you think it does? It concerned me to see more than one name on there. I think that's a good point. I guess I can think about that while you're mulling it over. But I think, at the very least, that brings it outside the language de-principal prosecuting attorney. I think it's also the problem that he does this in this informal memo, even in the New York. Under the New York statute, I discuss in my brief the Fusco case that Fury cited. New York has a very formalized procedure for designating someone in this way. It has to be, as I recall, a memo needs to be filed with the county clerk and with the county board of supervisors. It's a much more formalized process, maybe approaching the statute, that Mike Kerb used to rely on when Jerry Brown left the country, though I think not quite going that far. So I think that's the problem with the Fury case, Your Honor, is it relies on I can't believe Congress intended this and legislative history, that one is a single sentence and two proves too much. Funny thing aside, I told Mike Kerb before he did that it wouldn't work. Turns out I was right. But at least he had something to point to. There's nothing to point to here. I think the answer to all this groping around, Your Honor, is to go back to the language of the statute. Language of the statute says the, that means one person, principal, that means different than an assistant, and it says prosecuting attorney of either the state or a political subdivision. I think I've gotten down to two and a half minutes. I haven't gotten to the fruits issue, but I guess I'll rely on my briefing for that. Do you want to reserve? You may do so, Counsel. Yes, Your Honor. Very well. We'll hear from the state, from the government. May it please the Court. Jenny Wang on behalf of the United States. I think Your Honor hit the nail on the head in identifying that there's a difference between delegation and designation here. Defense counsel has looked to the plain language of the statute, looking at Section 1 and comparing it to Section 2. But those two are apples and oranges. Section 1, if you look at the language of Section 1, it talks about specifically the listed named persons who may authorize an application, whereas Section 2 talks about the principal prosecuting attorney who may apply for an application for a wiretap order. There's a crucial difference there. In so much as the federal statute, Section 1, lists specifically the persons who may authorize an application, but the person who actually made the application was me, a line assistant in the state of California. I have nothing to do with being in Washington, D.C., and I'm not one of the listed persons in Section 1. Is that because of Section 3? Any attorney for the government may authorize an application to a federal judge? I think that means that any attorney for the government may apply, but I need authorization from those listed persons in Section 1 in order to do so. And the analog for Section 2 of 2516 is that the states may decide who is authorized, who may authorize an application. The actual person who may apply is the principal prosecuting attorney, but it leaves to the legislatures of the states to decide who those persons are who may authorize. And in this case, in California- That seems backwards to me. If you've described Section 1, the federal system, as providing a short list of people who can authorize and a long list of people who can apply, you're now telling me the state system has what? A short list of those who can apply and a long list up to the state as to who can authorize? Well, the government actually made that argument in the Giordano case before the Supreme Court. And that case was about whether among those listed people in Section 1, whether they could further delegate to an executive assistant, a secretary. The government in that case argued that the federal government should have more power to delegate because the state system, as they argued, was more diffuse. And the Supreme Court didn't argue with their reading of Subsection 2, cited the legislative history regarding that. But the answer of the Supreme Court was simply that Congress intended to- We conclude that Congress did not intend the power to authorize wiretap applications to be exercised by any individuals other than, and then they named the people in the statute. Of Section 1 or Section 2? They don't really say right there which section, but that's what they say. You've got to be named and that's the end of it. Yes, in answer to your Honor's question, the Supreme Court simply said that Congress desired to centralize and limit the authority where it was feasible to do so. And it was feasible and easy, in fact, if they said it was easily implemented in the federal establishment. I'm still lost in this distinction you've drawn between apply and authorize. When I look at the statute, Section 2, I guess it uses apply, right? Yes. And you're telling me that the application here was submitted by the principal prosecuting attorney? Yes. And the application in this instance was the acting DA. Well, was he the acting DA? I look at the sheet signed by the actual district attorney and I don't see anything there saying this one person is the acting DA in my absence. If you look at the designation memo, which is ER 424, it cites the California wiretap statute, specifically the Part 629.50a, and says hereby designate the following individual to act in my absence. So three is one? I mean, the statute says the principal prosecuting attorney. And now we apparently have three people who are authorized to be the principal. Suppose there's a fight over whether a given indictment should be sought. And indeed, does this letter refer to anything other than wiretap application? Does it, in fact, say that any one of these three people is the principal prosecuting attorney or is the acting district attorney in the absence of the elected DA? If you look at the declaration of the district attorney, ER 422, a couple pages before it, in paragraph 3, he specifically says that he issued a directive in accordance with that code section, the California wiretap statute. He didn't say he did, but did he? I mean, I'm looking at his appointment or his designation. I don't know whether that's in compliance with state law or not, but it doesn't appear to appoint somebody as an acting district attorney in his absence. It appears to designate three people or to identify. No, it designates the verb use. It designates three different people, apparently for only this function. He designates them to act in his absence, and he designates them in order. One, Dennis Christie, the ADA. Two, which comes second, in the plain language of that memo, is the second person to do so would be Hackleman, and the third is Hanson. It doesn't say that. It doesn't say in the absence of Dennis Christie, then you move to Hackleman. In the absence of those two, then you move to Hanson. Well, it does say in my absence. And Clark Hanson is identified here as chief deputy district attorney, which suggests that this appointment, I mean, either vitiates, that title presumably means something. He's the chief deputy, but this appointment suggests something different if the sequence is supposed to be meaningful. And it also suggests that this designation only has to do with wiretap applications. It doesn't have to do with any other function of the office. As far as the meaningfulness of the designation, I want to note that this is an internal memorandum and such that the persons within the DA's office would know the meaning of who these people are. They're explained in ER 422. So what happens if another decision has to be made by the office, with regard to seeking an indictment, for example? Who has the power to make that decision if Mr. Ramos is not available? Those facts aren't in the record. Then we don't have facts in the record, do we, that suggest that Mr. Christie really is the principal prosecuting attorney in the absence of Mr. Ramos? We do with respect to wiretaps. Well, with respect to wiretaps, there are 18 million other functions. I believe you can read this memo to apply to that ADA Christie, who is second in command after DA Ramos, was in charge of the office. Somebody else has got the title of chief deputy district attorney. That person is the, he's fourth in line, as explained in DA Ramos' declaration. Fourth in line for this purpose or for purposes generally? In general. He explains the hierarchy of the office, that the structure is divided into four levels. There's a DA, and this is ER 422. DA at the top, two assistant DAs, which are Christie and then Hackleman, and then you have five chief deputy district attorneys, and then several supervising deputy districts. So, again, because this is an internal memo, those reading it would be guided by it, as well as their knowledge of the workings of the office. I'm looking at page 422. I assume you're referring to paragraph 3, starting in line 6. And also the one above it. And the one above it at all times? All right. Well, it seems to me your strongest argument would be that the designation was specifically with respect to the Wiretaff statute on line 7. Yes, sir. Is that right? Yes, Your Honor. I just want to be sure I understand your argument. And I want to clarify one point. Mr. Grant mentioned that the Fury case relied on a New York statute where the designation memo, the equivalent of the designation memo here, was filed with the county clerk's office. That simply was because it was in accordance with New York law. You look at other cases, including Smith, defendant's strongest case. In that case, Massachusetts law was at issue there, and there was no filing with the county clerk's office. In that case, the DAs used what they called a letter of designation. It sounds like from the case that it was quite an informal memo, it was a letter. And the letter was written to the ADA in that case in order to authorize the application of a Wiretaff in that case. So it's not. Or whether he was absent or available. In other words, it was just a rank delegation, you would say, in the Smith case to cross him. It was, but it's interesting that of the five Wiretaffs at issue in that case, four of them were written pursuant to a designation memo by the DA. The fifth one was by the acting district attorney. And the First Circuit in that case said that it made no factual difference. So they saw that the acting DA in that case was the DA for purposes of the Wiretaff case. Do you think Fury is a holding? I'm sorry? Do you think Fury is a holding in your favor? I believe. The whole discussion is in a footnote, and at the end of the footnote they say, but we don't get to this issue because it was forfeited. I agree that the dicta was not closely reasoned in Fury. That the discussion of this issue was given shorter shrift than, say, in Giordano or in Smith. The holding is consistent with the government's position that in New York you can designate somebody to act in your absence to make applications. Do we know whether Christie could do anything in Ramos' absence that Ramos could do, or only this Wiretaff application stuff? Given that DA Ramos wasn't in the office at all for at least three days that we know of, there had to be somebody who was acting DA. You can be a DA by telephone nowadays when President Obama says to us he's president from Hawaii with his BlackBerry and the electronic communications. It does not sound like this was the case, given that he was in the hospital with a family member with a serious health condition. So DA Christie was, in fact, the acting DA at the time. Where do we know that? From the delegation memo, as well as... It's pointed out 14 times already. It only says 629.50a. It doesn't say for all purposes. It does say that. The government submits that that was to clarify that it was in accord, it was to comply with state law. The use of that term was to ensure that the Wiretaffs that were signed were valid. With respect to defendant's point regarding his ability to withdraw his plea agreement, the government does agree that should your honors find against the government here and find that Title III was violated, the defendant would, in fact, due to the terms of his plea agreement, be allowed to withdraw his plea. However, that does not resolve the question of his motion to suppress. The government raised below and again here the attenuation question of whether the evidence should be suppressed. So the government submits that should your honors find against the government on the Title III issue that you remand to the district court with instructions to decide the motion to suppress consistent with that decision. And for that reason, the attenuation issue need not be addressed at this juncture. Very well. Thank you, Counsel. Mr. Gunn, you have some reserved time. Let me ask you a practical question. Suppose Mr. Ramos was – oh, I'm sorry. This is a question for Mr. Gunn. I assumed you were heading for the lectern. As a practical matter, suppose Mr. Ramos has gone on a two-week trek into the wilderness, no telephones, no e-mail, nothing. Is your position still that even then he is the only person in the county of San Bernardino that could authorize, that could make the application? Given the state laws it's written, yes, Your Honor. But there's a couple points to remember when you consider that. First of all, Congress wanted to make sure a really important person was making – the principal person was making these decisions. Are you suggesting that chief deputy district attorneys aren't really important people? They aren't elected. They aren't responsive to the elected – and that seems to be what Congress said. The DOJ people are elected, and Section 1 includes acting DOJ officers who aren't even confirmed by the Senate. Right. The DOJ people are approved in the way the statute was written in 1968. When this provision was written, they were all approved by the Senate, I believe. But the second point – You're right, but that was completely changed. Right, but the principal prosecuting attorney language was never changed. The second point, Your Honors, Congress recognized that sometimes they wouldn't be able to get wiretaps. That was the tradeoff. They wanted to make it hard. Where did they say that? It was a testimony. I guess I should say that. I'm going to legislate. Gotcha. But the point is – That's the story I want to go so far. I mean, there's a tradeoff. And the third answer in this question, in this case, is there – this was a – if all sorts of federal agents involved in this investigation, they could have gone to the feds or they could have gone to another county district attorney. It was a multi-county investigation. If they thought they needed to, presumably they would. So the question becomes, is the interpretation they're offering up the one that should have been expected to understand at the time? Well, no, I don't think there's any good faith layer here. I think the assistant DA should have known all the legal arguments. I'm just saying that you're telling us they could have gone elsewhere really doesn't change anything. Well, it changes – what it means is this isn't a statute or a case or a circumstance where people couldn't get wiretaps. Also, in this investigation, they didn't need it right away. Waiting two weeks wouldn't have been a big deal. Two weeks? Do you have any idea how long it takes to process a federal application to get approval? When I was back there, they first had to go through the FBI's legal officers, and the legal people who worked for Bill Webster took forever. And then Bill Webster personally, because he'd been a U.S. attorney at Eighth Circuit, the judge, then he personally took a look at it after his people looked at it. Then it came over to me, and I had a battery of lawyers that looked at it for two weeks before they even brought it to me. The point is it would take an extra two weeks on top of whatever it might take. It looks like the state process could – the other point, Your Honor, is the state could probably write a statute, such as Lieutenant Governor Kerb tried to rely on in the 80s that said when the district attorney's away on a track, he's out of the picture and the other guy's the acting district attorney who gets to make all decisions. Your Honor pointed to that memo. I think it's real important what some of the questions were suggesting. You need a state statute, at the very least, that makes the person the principal prosecuting attorney for all purposes. And that means he gets to make, one, he gets to make all decisions, and two, he's the only person and the DA's out of the picture, perhaps because he's on a trek in the wilderness somewhere. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: O'scannlain, Trott, Clifton